1           UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
2

3    ----------------------------------------------------------
                                      )
     United States of America,        )   File No. 19-CR-337
4                                     )             (WMW/HB)
            Plaintiff,                )
5                                     )
     vs.                              )   St. Paul, Minnesota
6                                     )   October 8, 2020
     Samuel Lamar Brantley,           )   9:17 a.m.
7                                     )
            Defendant.                )
8    ----------------------------------------------------------

9           BEFORE THE HONORABLE WILHELMINA M. WRIGHT
10              UNITED STATES DISTRICT COURT JUDGE

11                  **(CHANGE OF PLEA HEARING)**

12

     <u>APPEARANCES</u>
13    For the Plaintiff:        U.S. Attorney's Office
                                SAMANTHA H. BATES, AUSA
14                              W. ANDERS FOLK, AUSA
                                600 U.S. Courthouse
15                              300 South Fourth Street
                                Minneapolis, Minnesota 55415
16
      For the Defendant:        ROBERT D. SICOLI, ESQ.
17                              Suite 117
                                2136 Ford Parkway
18                              St. Paul, Minnesota 55116

19    Court Reporter:           LORI A. SIMPSON, RMR-CRR
                                Suite 146
20                              316 North Robert Street
                                St. Paul, Minnesota 55101
21

22

23

24

          Proceedings reported by court reporter; transcript
25    produced by computer.

1           **P R O C E E D I N G S**

2                **IN OPEN COURT**

3        (Defendant present)

4             COURTROOM DEPUTY:  The matter before the Court is

5     Case No. 19-CR-337, United State of America vs. Samuel Lamar

6     Brantley.

7             Counsel, please note your appearance for the

8     record.

9             MS. BATES:  Good morning.  Samantha Bates and

10    Anders Folk for the United States.

11            THE COURT:  Good morning.

12            MR. SICOLI:  Good morning, Your Honor.  Robert

13    Sicoli on behalf of Mr. Brantley.

14            THE COURT:  Thank you.  Good morning, Mr. Sicoli.

15    Good morning, Mr. Brantley.

16            THE DEFENDANT:  Good morning, ma'am.

17            THE COURT:  So we are here for a guilty plea

18    hearing today.

19            As an initial matter, I would like to remind

20    everybody that you should keep your face masks on while

21    you're in the courtroom.  Certainly counsel or other

22    participants may temporarily remove them while you're

23    addressing the Court provided that you are appropriately

24    distanced from the people who are around you.

25            To begin with, if there is anything that I say

1   today, Mr. Brantley, that you do not hear or you do not

2   understand, please tell me so that I can clarify it for you.

3   And it's really important that you not answer a question

4   that confuses you or that you don't hear clearly.

5          I will be asking you many times if you understand

6   something.  So please don't tell me that you understand

7   something unless you truly understand it and don't have any

8   questions about it.  Okay?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  All right.  And if you tell me that

11  you don't understand something, either I will explain it for

12  you or your counsel or one of the Assistant U.S. Attorneys

13  will explain it.  Okay?

14         THE DEFENDANT:  Okay.

15         THE COURT:  All right.  Now, because this is your

16  first appearance before me in connection with the charges

17  against you, I must advise you of several important matters.

18         First of all, you've been charged with two counts

19  of armed robbery, two counts of carrying a firearm during

20  and in relation to a crime of violence, conspiracy to commit

21  armed robbery, and disposing of a firearm to a felon.  These

22  are all felony offenses that you've been charged with.

23         Now, you have the right to be represented by an

24  attorney during these proceedings and that right includes

25  the right to be represented by an attorney whom you hire; or

1    if you cannot afford to hire an attorney, you have the right

2    to have an attorney appointed to represent you at no cost to

3    you.

4            You also have the right to remain silent.  You

5    don't have to answer any of my questions today.  And if you

6    begin to answer one of my questions, you can stop at any

7    time and decide not to say anything more.

8            It's important for you to understand that any

9    statement that you make, anything that you say today may be

10   used against you.  Do you understand that?

11           THE DEFENDANT:  Yes, ma'am.

12           THE COURT:  Now, are you a United States citizen,

13   Mr. Brantley?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Okay.  And have you received a copy of

16   the Indictment?  The Indictment is the document that

17   contains the written charges that the government has made

18   against you.

19           THE DEFENDANT:  Yes, I have.

20           THE COURT:  Okay.  And have you read the

21   Indictment?

22           THE DEFENDANT:  Yes, ma'am.

23           THE COURT:  Okay.  And has Mr. Sicoli explained

24   the charges that are alleged against you and answered your

25   questions about those charges?

1          THE DEFENDANT:  Yes, he has.

2          THE COURT:  Okay.  Mr. Sicoli, does Mr. Brantley

3     waive his right to have the Indictment read?

4          MR. SICOLI:  Yes, Your Honor.

5          THE COURT:  Okay.  So, Mr. Brantley, before I can

6     accept your guilty plea, I have to ask you several questions

7     and you must answer those questions under oath.  So at this

8     time my courtroom deputy will swear you in.

9          COURTROOM DEPUTY:  Please raise your right hand.

10     (Defendant sworn)

11                          **EXAMINATION**

12     BY THE COURT:

13     Q.  So, Mr. Brantley, you understand now you are under oath.

14     Because you are under oath, if you say anything that is not

15     true, you could be prosecuted for a separate crime and that

16     crime is perjury, and the government could use any false

17     statements that you give under oath against you in that

18     prosecution.

19          I expect you to tell the truth today, but I'm

20     telling you this because it is so important for you to

21     understand that you must be truthful in everything that you

22     say today.  Do you understand that?

23     A.  Yes, ma'am.

24     Q.  Okay.  And the most important thing for you to

25     understand is that if you plead guilty and I accept your

1    guilty plea, you'll not be able to change your mind and take

2    back your guilty plea.

3              So if anything happens today that confuses you or

4    that worries you, you should get the help that you need from

5    Mr. Sicoli or from me before you plead guilty, because after

6    you plead guilty it may be too late for you to get the help

7    that you need.  Do you understand?

8    A.  Yes, ma'am.

9    Q.  Okay.  Now, if you wish to speak with Mr. Sicoli at any

10   time today, you're welcome to do so.  So if I ask a question

11   and you're not certain whether to answer that question or

12   how to answer that question, just tell me that you would

13   like to speak with Mr. Sicoli.  I will give you an

14   opportunity to do so and you will be able to do so

15   confidentially.  I won't be able to hear.  No one else will

16   be able to hear.  It will be a private conversation between

17   you and Mr. Sicoli.  And I want you to understand I don't

18   mind waiting while you're doing that.  Do you understand?

19   A.  Yes, ma'am.

20   Q.  Okay.  Now, Mr. Brantley, I'll begin by asking you a few

21   questions to make sure that you are competent to enter a

22   guilty plea today.

23              So tell me your full name, Mr. Brantley.

24   A.  Samuel Lamar Brantley.

25   Q.  And, Mr. Brantley, have you ever used any other names?

1    A.   Negative.

2    Q.   Okay.  And how old are you, Mr. Brantley?

3    A.   I'm 33.

4    Q.   And how far did you go in school?

5    A.   I have two years of college.

6    Q.   Okay.  And based on our conversation, it appears that

7    you don't have any trouble understanding the English

8    language.  Is that true?

9    A.   That's true.

10   Q.   Okay.  And based on your education, you are able to

11   read, correct?

12   A.   Yes, ma'am.

13   Q.   And right now are you under the influence of any

14   alcohol?

15   A.   No, ma'am.

16   Q.   And have you had any in the last 24 hours?

17   A.   No, ma'am.

18   Q.   Okay.  And next I have some questions about drug use and

19   when I say, "drug use," I mean any kind of drug.  So that

20   includes prescription medication.  It also includes

21   over-the-counter medication that you might take.  Okay?

22   A.   Um-hmm.

23   Q.   Are you under the influence of any drug or medication at

24   this time?

25   A.   No, ma'am.

1    Q.  And have you taken any drug or medication in the last

2    24 hours?

3    A.  No, ma'am.

4    Q.  So you're generally in good health; is that correct?

5    A.  Yes, ma'am.

6    Q.  And you are thinking clearly today?

7    A.  Yes, I am.

8    Q.  Okay.  Now, you're represented by Mr. Sicoli.  Have you

9    fully discussed the charges against you with Mr. Sicoli?

10   A.  Yes, I have.

11   Q.  And have you told Mr. Sicoli everything that you want

12   him to know about your case?

13   A.  Yes, ma'am.

14   Q.  Okay.  Now, are you fully satisfied with the legal

15   services that you've received from Mr. Sicoli?

16   A.  Yes, ma'am.

17   Q.  Okay.

18         THE COURT:  And, Mr. Sicoli, have you had enough

19   time to investigate the law and the facts of Mr. Brantley's

20   case and to discuss them with him?

21         MR. SICOLI:  Yes, Your Honor.

22         THE COURT:  And based on your discussions,

23   Mr. Sicoli, are you satisfied that Mr. Brantley understands

24   the charges against him and the punishments that he faces?

25         MR. SICOLI:  Yes, Your Honor.

1          THE COURT:  Okay.  And based on your conversations

2     with Mr. Brantley, are you satisfied that he is competent to

3     make the decision about whether to plead guilty today?

4          MR. SICOLI:  Yes, Your Honor.

5          THE COURT:  Okay.

6     BY THE COURT:

7     Q.  So, Mr. Brantley, if you enter a guilty plea, you'll be

8     giving up a number of important rights and the law requires

9     that I review those rights with you before you make your

10    final decision about whether to plead guilty.

11         So, first, you have the right to plead not guilty

12    to the case and the -- I'm sorry, to the charges against

13    you.  Do you understand that?

14    A.  Yes, ma'am.

15    Q.  And you have the right to have a trial with a jury

16    that's made up of 12 citizens from this district.  Do you

17    understand?

18    A.  Yes, ma'am.

19    Q.  Okay.  Now, you also have the right to a speedy trial,

20    and what that means is that if you do want to take your case

21    to trial, your trial would be held in the next few months.

22    You would not have to wait any longer than that.  Do you

23    understand?

24    A.  Yes, ma'am.

25    Q.  Okay.  You also have the right to be represented by an

1    attorney at every stage of this proceeding.  So if you went

2    to trial, that would be before trial, during trial, and

3    after trial.  Understood?

4    A.  Yes, ma'am.

5    Q.  Okay.  Now, it's your right to be represented by an

6    attorney whom you hire; or if you cannot afford to hire an

7    attorney, you have the right to be represented by an

8    attorney who is appointed to represent you at no cost to

9    you.  Understood?

10   A.  Yes, ma'am.

11   Q.  Okay.  Now, if you went to trial, the government would

12   seek to prove your guilt by calling witnesses, who would

13   come here into this courtroom.  They would be sworn.  They

14   would sit in the witness stand and they would testify

15   against you.

16           You would have the right to confront those

17   witnesses, and what that means is that you would have the

18   right, first of all, to be physically present in this

19   courtroom whenever anyone testified at your trial so that

20   you could see and you could hear that testimony for

21   yourself.  Understood?

22   A.  Yes, ma'am.

23   Q.  Okay.  It also means that your attorney, Mr. Sicoli,

24   would have the right to ask questions of anyone who

25   testified at your trial to try to show the weaknesses in

1    their testimony.  Understood?

2    A.  Yes, ma'am.

3    Q.  Okay.  Now, you also would have the right to remain

4    silent at your trial and no one could force you to testify.

5    The decision whether to testify or not to testify would be

6    entirely your decision.  Do you understand that?

7    A.  Yes, ma'am.

8    Q.  Okay.  And if you decided not to testify, your silence

9    could not be used against you.  So, in fact, if you wanted

10   me to, I would instruct the jurors in your case that when

11   they were deciding whether you had been proven guilty beyond

12   a reasonable doubt, they could not consider the fact that

13   you chose not to testify.  Do you understand?

14   A.  Yes, ma'am.

15   Q.  Okay.  Now, although you would not have to testify at

16   your trial or call any witnesses or present any evidence,

17   you'd have the right to do all of those things if you wished

18   to do so.

19          So you would have the right to take the stand and

20   testify before the jury on your own behalf and tell the jury

21   your side of the story.  Do you understand that?

22   A.  Yes, ma'am.

23   Q.  Okay.  You'd also have the right to call others to

24   testify on your behalf and, in fact, you could subpoena

25   witnesses, and what that means is that you could get a court

1    order from me requiring someone to testify at your trial,

2    whether that person wanted to or not.  Understood?

3    A.  Yes, ma'am.

4    Q.  Okay.  Now, if you did testify and if you did call

5    witnesses or present any evidence at your trial, that would

6    not change the burden of proof.  The government would still

7    have the burden of proving your guilt beyond a reasonable

8    doubt.  Understood?

9    A.  Yes, ma'am.

10   Q.  Okay.  And if you went to trial, you could not be

11   convicted of any charge unless every single member of the

12   jury found that you had been proven guilty beyond a

13   reasonable doubt.  So, in other words, any guilty verdict

14   would have to be unanimous, all 12 jurors would have to

15   agree.  Do you understand that?

16   A.  Yes, ma'am.

17   Q.  Now, at trial, if you went to trial, you would be

18   presumed innocent and I would instruct the jurors that they

19   must presume that you are innocent.  Do you understand that?

20   A.  Yes, I do.

21   Q.  Okay.  So the burden would be on the United States or

22   the government to prove your guilt.  It would not be on you

23   to prove your innocence.  Understood?

24   A.  Yes, ma'am.

25   Q.  Okay.  And not only would the burden be on the

1    government to prove your guilt, but the government would

2    have to prove your guilt beyond a reasonable doubt.

3    Understood?

4    A.  Yes, ma'am.

5    Q.  Okay.  You wouldn't have to prove anything at your

6    trial, Mr. Brantley, and, in fact, I would instruct the

7    jurors that unless they were convinced of your guilt beyond

8    a reasonable doubt, they would have to find you not guilty.

9    Do you understand that?

10   A.  Yes, ma'am.

11   Q.  Okay.  Now, finally, if you plead guilty and I accept

12   your guilty plea, you'll stand convicted of the charge that

13   you plead guilty to and you will not receive a trial on that

14   charge and you'll be giving up or you will give up all of

15   the other rights that I have just described.

16          So do you understand that if you plead guilty and

17   I accept your guilty plea, you'll be giving up all of the

18   rights that I just reviewed with you?

19   A.  Yes, ma'am.

20   Q.  Okay.  So, Mr. Brantley, I understand that you're here

21   to plead guilty to Counts 1, 2, 3, 5, and 7 of the

22   Indictment.  So we'll review now the nature of those

23   charges.

24          Count 1 of the Indictment charges you with armed

25   bank robbery and that's in violation of Title 18, United

1   States Code, Sections 2113(a) and 2113(d).  Now, for you to

2   be convicted of this charge, the government would have to

3   prove beyond a reasonable doubt four elements:

4        First, the government would have to prove beyond a

5   reasonable doubt that on February 18th you, Mr. Brantley,

6   took approximately $9,816 in United States currency from the

7   person and presence of victim tellers while that United

8   States currency was in the care or custody of Lake Area Bank

9   in White Bear Lake, Minnesota.  That's the first element.

10       The second is that that taking was by force,

11   violence, and intimidation.

12       Third, Mr. Brantley, you put the lives of the

13   victim tellers in jeopardy by the use of a dangerous weapon

14   while taking approximately $9,816 in United States currency.

15       And then, fourth, that the deposits of the Lake

16   Area Bank in White Bear Lake, Minnesota were insured by the

17   Federal Deposit Insurance Corporation at the time of the

18   armed bank robbery.

19       So that's Count 1.  Any questions about that?

20   A.  No, ma'am.

21   Q.  Okay.

22       THE COURT:  Counsel?

23       MS. BATES:  Your Honor, I'm sorry.  I believe that

24   you said February 18th, but it's actually, just for clarity,

25   February 22nd of 2018.

1                  THE COURT:  Thank you.

2                  MS. BATES:  Thank you.

3                  THE COURT:  That's correct.  Let's make sure that

4        our record is clear.

5        BY THE COURT:

6        Q.  The offense occurred on February 22, 2018.  That's the

7        bank robbery that you are pleading guilty to as to Count 1,

8        correct?

9        A.  Yes, ma'am.

10       Q.  Okay.

11                 THE COURT:  Thank you, Counsel.

12       BY THE COURT:

13       Q.  Now, as to Count 2 of the Indictment, it charges you

14       with armed bank robbery, in violation of Title 18, United

15       States Code, Sections 2113(a) and 2113(d).  And for you to

16       be convicted of that charge, the government would have to

17       prove beyond a reasonable doubt four elements:

18                 The first element being that on May 4, 2018,

19       Mr. Brantley, you took approximately $88,618 in United

20       States currency from the person and presence of victim

21       tellers while that United States currency was in the care

22       and custody of Bremer Bank in Brooklyn Center, Minnesota.

23                 The second element is that such taking was by

24       force, violence, and intimidation.

25                 Third, Mr. Brantley, you put the lives of the

1    victim tellers in jeopardy by the use of a dangerous weapon

2    while taking that approximately $88,618 in United States

3    currency.

4           And, fourth, that the deposits of Bremer Bank in

5    Brooklyn Center, Minnesota were at the time, May 4, 2018,

6    insured by the Federal Deposit Insurance Corporation.

7           Are there any questions about Count 2?

8    A.  No, ma'am.

9    Q.  Now, Count 3 of the Indictment charges you with

10   carrying a firearm during and in furtherance of a crime of

11   violence, in violation of Title 18, United States Code,

12   Section 924(c)(1)(A)(ii).  And for you to be convicted of

13   this charge, the government would have to prove beyond a

14   reasonable doubt:

15          First, that on or about February 22, 2018 you,

16   Mr. Brantley, committed the crime of bank robbery at Lake

17   Area Bank in White Bear Lake, Minnesota.

18          And, two, that you knowingly brandished a firearm

19   in furtherance of that bank robbery.

20          Any questions about Count 3, Mr. Brantley?

21   A.  No, ma'am.

22   Q.  Okay.  Count 5 of the Indictment charges you with

23   conspiracy to commit armed bank robbery and that's a

24   violation of Title 18, United States Code, Sections 2113(a),

25   2113(d), and 371.  For you to be convicted of this charge,

1    the government would have to prove beyond a reasonable doubt

2    four elements:

3              First, on or before February 22, 2018 and

4    continuing through at least on or about May 4, 2018 you and

5    at least one other person reached an agreement to commit the

6    crimes of bank robbery.

7              Two, you, Mr. Brantley, voluntarily and

8    intentionally entered into the agreement either at the time

9    it was first reached or at some later time while the

10   agreement was still in effect.

11             Third, at the time you joined in the agreement,

12   you knew the purpose of the agreement.

13             And, fourth, while that agreement was in effect, a

14   person or persons who had joined in the agreement knowingly

15   committed one or more of the acts -- or acts for the purpose

16   of carrying out or carrying forward that agreement.

17             Do you understand those elements of Count 5, which

18   is conspiracy to commit bank robbery?

19   A.  Yes, ma'am.

20   Q.  Okay.  And then Count 7 of the Indictment charges

21   you with disposing a firearm to a felon, in violation of

22   Title 18, United States Code, Sections 922(d)(1) and

23   924(a)(2).  Now, for you to be convicted of this charge, the

24   government would have to prove beyond a reasonable doubt

25   three elements:

1          The first element is that on or about May 22, 2018

2     you, Mr. Brantley, knowingly disposed of firearms,

3     specifically a Glock 27 handgun and a Heckler & Koch

4     handgun, to an individual known to you and identified in the

5     plea agreement as "the Shooter."

6          Second, that this individual identified in the

7     plea agreement as "the Shooter" was convicted of a felony,

8     which is a crime punishable by imprisonment for a term of

9     more than one year.

10          And, three, that at the time of the disposal you,

11     Mr. Brantley, knew or had reasonable cause to believe that

12     the person identified in the plea agreement as "the Shooter"

13     was a convicted felon.

14          Now, do you understand that these are the charges

15     against you to which you wish to plead guilty?

16     A.  Yes, ma'am.

17     Q.  Okay.  I want to review with you, then, the penalties

18     that you'll be facing if you plead guilty to Counts 1, 2, 3,

19     5, and 7.

20          First imprisonment.  As to Count 1, which is armed

21     bank robbery, up to a maximum of 25 years.  As to Count 2,

22     armed bank robbery, again up to a maximum of 25 years.  As

23     to Count 3, carrying a firearm in furtherance of a crime of

24     violence, there's a mandatory minimum term of seven years up

25     to a maximum term of life imprisonment.  As to Count 5,

1    which is conspiracy to commit armed bank robbery, the

2    maximum penalty for imprisonment would be ten years.  And as

3    to disposing of a firearm to a felon, up to a maximum of ten

4    years' imprisonment.

5              Now, as to supervised release for the offenses,

6    that I'll review.  First, for the armed bank robbery which

7    is Count 1, that's up to a maximum of five years' supervised

8    release.  For Count 2, also armed bank robbery, up to five

9    years of supervised release.  As to Count 3, carrying a

10   firearm in furtherance of a crime of violence, up to a

11   maximum of five years' supervised release.  As to Count 5,

12   which is conspiracy to commit armed bank robbery, up to a

13   maximum of three years' supervised release.  And as to

14   Count 7, which is disposing of a firearm to a felon, up to a

15   maximum of three years' supervised release.

16             Do you have any questions about the supervised

17   release terms that you are exposed to in this case?

18   A.  No, ma'am.

19   Q.  Okay.  Now let's move to the fines.  As to Count 1, the

20   maximum fine is $250,000.  I could impose a fine for

21   Count 2, which is armed bank robbery, up to $250,000.  As to

22   Count 3, the maximum fine -- Count 3 being carrying a

23   firearm in furtherance of a crime of violence -- up to

24   $250,000.  As to Count 5, conspiracy to commit armed bank

25   robbery, the maximum potential fine is $250,000.  And as to

1   Count 7, disposing of a firearm to a felon, you could be

2   fined up to $250,000.

3              Any question about that at this time,

4   Mr. Brantley?

5   A.  No, ma'am.

6   Q.  Now, there is a mandatory special assessment of $100 per

7   count and that's due at the time of sentencing.

8              Also, under the Mandatory Victim Restitution Act,

9   I'm required to order you to pay restitution to the victims

10  of your crime.

11             I also could order you to forfeit the property

12  that's described in the forfeiture section of the Indictment

13  and in paragraph 11 of the plea agreement.

14             And, finally, I could order you to pay the costs

15  of prosecuting you.

16             So, Mr. Brantley, do you understand that these are

17  the penalties that might be imposed if you plead guilty to

18  these offenses?

19  A.  Yes, ma'am.

20  Q.  Okay.  Now, I mentioned supervised release as a penalty,

21  and I'll explain what supervised release is now.  Supervised

22  release is what happens after a person convicted of a crime

23  is released from prison.

24             So first I'll decide how long you must serve on

25  supervised release, and I'll also decide what conditions you

1      must follow while you're on supervised release.

2              Now, if you were to violate any of the conditions

3      of your supervised release, you could be sent back to prison

4      and kept in prison for up to the full length of your term of

5      supervised release without getting any credit for the time

6      that you had already served on supervised release prior to

7      your violation.  Do you understand that?

8      A.  Yes, ma'am.

9      Q.  Okay.  And I need to also advise you that there is no

10     parole in our prison system, in the federal prison system.

11     So if you are sentenced to prison, you will have to serve

12     your full sentence.  You will not be released early on

13     parole.  Do you understand that?

14     A.  Yes, ma'am.

15     Q.  Okay.  And also because you are a United States citizen

16     and you've been charged with a felony offense, if you plead

17     guilty to any felony offense, you may lose your rights to

18     vote, to hold public office, to serve on a jury, and to

19     possess certain types of weapons, including a firearm or

20     ammunition.  Do you understand that?

21     A.  Yes, ma'am.

22     Q.  Okay.  So I understand that you've entered into a plea

23     agreement with the United States.  Is that correct,

24     Mr. Brantley?

25     A.  That's correct.

```
 1     Q.  Okay.  Have you read the plea agreement?

 2     A.  Yes, ma'am.

 3     Q.  And has Mr. Sicoli carefully gone through the plea

 4     agreement with you and explained the terms of the plea

 5     agreement?

 6     A.  Yes, he has.

 7     Q.  And has he answered all of your questions about the plea

 8     agreement?

 9     A.  Yes.  Yes, ma'am.

10     Q.  Okay.  And do you, Mr. Brantley, believe that you

11     understand the terms of the plea agreement?

12     A.  Yes, ma'am.

13     Q.  Okay.  So I will review with you some of the terms of

14     the plea agreement now, not all of them.

15          Now, if you plead guilty, you'll give up your

16     right to file any motions before trial, and those would be

17     motions or requests asking me to rule that certain evidence

18     can't be used against you.  Do you understand that?

19     A.  Yes, ma'am.

20     Q.  Okay.  And your plea agreement provides that you accept

21     responsibility for your criminal conduct, which may entitle

22     you to a reduction in your guidelines offense level so long

23     as you continue to cooperate with this process and provide

24     requested information as it relates to the charged criminal

25     conduct, that being the conduct that's described in the plea
```

1      agreement.

2                  Now, the government has indicated it will

3      recommend a two-level reduction and will move for an

4      additional one-level reduction so long as you continue to

5      accept responsibility and cooperate with this process.

6                  So, Mr. Brantley, do you understand that it is

7      entirely up to the government or the United States to decide

8      whether to make a motion for a reduction based on your

9      acceptance of responsibility for your criminal conduct?

10     A.  Yes, ma'am.

11     Q.  Okay.  And do you also understand that even if you

12     believe you've satisfied the requirements for a reduction,

13     the government might disagree and choose not to make that

14     motion; you understand that?

15     A.  Yes, ma'am.

16     Q.  Okay.  And do you also understand that even if the

17     government does move for a reduction, I might deny the

18     motion and decide not to reduce your sentence; you

19     understand that's a possibility?

20     A.  Yes, ma'am.

21     Q.  Okay.  And, again, do you understand that no matter what

22     happens as it relates to your acceptance of responsibility,

23     you will not be able to withdraw or take back your guilty

24     plea; understood?

25     A.  Yes, ma'am.

1    Q.   Okay.   Now, after I impose the sentence, the government

2    will have a right to appeal that sentence if the government

3    thinks that I made a mistake or gave you a sentence that was

4    too short.   Do you understand that?

5    A.   Say that again, please.

6    Q.   Okay.   So after I impose your sentence, the government

7    will have the right to appeal your sentence if the

8    government thinks that I made a mistake or if the government

9    thinks that I sentenced you to a term of imprisonment that

10   was too short.   Do you understand that?

11   A.   Yes, ma'am.

12   Q.   Okay.   And also a defendant in a criminal case normally

13   has the right to appeal a sentence if that defendant thinks

14   that I made a mistake or gave a sentence that was too long.

15   But in your plea agreement you agreed that if I sentence you

16   to serve 162 months of imprisonment or a shorter length of

17   time, you will not have the right to appeal your sentence.

18   It's only if I impose a sentence of more than 162 months'

19   imprisonment that you'll have the right to appeal your

20   sentence.   Do you understand those limitations on your right

21   to appeal your sentence?

22   A.   Yes, ma'am.

23   Q.   Okay.   Now, finally, the government has agreed that if

24   you plead guilty to Counts 1, 2, 3, 5, and 7, the government

25   will move to dismiss Counts 4 and 6 when you're sentenced on

1    Counts 1, 2, 3, 5, and 7.  So if that occurs, the judgment

2    in this case will include a dismissal of Counts 4 and 6.  Do

3    you understand that?

4    A.  Yes, ma'am.

5    Q.  Okay.

6              THE COURT:  Now, at this time, Ms. Bates --

7              MS. BATES:  Yes, Your Honor.

8              THE COURT:  -- I'll ask you to review with

9    Mr. Brantley the guidelines calculations that are contained

10   in the plea agreement and any other important provisions of

11   the plea agreement that I haven't already covered other than

12   the factual basis, and I'll ask you to establish the factual

13   basis a little bit later in the hearing.

14             MS. BATES:  Thank you, Your Honor.

15             THE COURT:  You're welcome.

16                         **EXAMINATION**

17   BY MS. BATES:

18   Q.  Good morning, Mr. Brantley.

19   A.  Good morning.

20   Q.  We're just going to go over some of the guideline

21   calculations.  They start on page 7 of the plea agreement.

22   Okay?

23   A.  Okay.

24   Q.  Have you had a chance to thoroughly go over these

25   guideline calculations with Mr. Sicoli?

1    A.  Yes, I have.

2    Q.  And did he go over the fact that you're being sentenced

3    in accordance with the Federal Sentencing Act and the United

4    States Sentencing Guidelines with you?

5    A.  Yes, ma'am.

6    Q.  And did he go over the fact that some of these counts

7    group together to come to a cumulative base offense level?

8    A.  Yes.

9    Q.  And that cumulative base offense level was 30, correct?

10   A.  Yes.

11   Q.  And do you understand how the counts group together to

12   come to the base offense level of 30 and agree with that

13   base offense level?

14   A.  Yes, I do.

15   Q.  Then after you take that base offense level of 30,

16   assuming that you proceed and cooperate with all of the

17   rules laid out in this plea agreement, you will receive,

18   most likely, two points off for acceptance as well as an

19   additional point off at sentencing if the United States

20   moves for those points.  Do you understand that?

21   A.  Yes, I do.

22   Q.  Assuming that that happens, then your base offense level

23   will be 27.  Do you agree with that?

24   A.  Yes, ma'am.

25   Q.  Now, did Mr. Sicoli go through the criminal history

1     category with you?

2     A.  Yes.

3     Q.  And the plea agreement states that the parties both

4     believe that your Criminal History Category is I, correct?

5     A.  Yes, ma'am.

6     Q.  Now, you understand that that's what the parties

7     believe, but there is a chance that the parties could be

8     wrong, correct?

9     A.  That's correct.

10    Q.  And in the end it's going to be up to the Court to

11    decide what your criminal history category is, you

12    understand that?

13    A.  Yes, I do.

14    Q.  Now, if we take the base offense level for Counts 1, 2,

15    and 5, which was 27, and then we take your criminal history

16    category, the guideline range for those counts is 70 to 87

17    months' imprisonment.  Do you understand that and agree with

18    that?

19    A.  Yes, I do.

20    Q.  Now, Count 3 is a little bit different.  And I'm sure

21    that Mr. Sicoli went over Count 3 with you, correct?

22    A.  Yes, that's correct.

23    Q.  Now, Count 3 has a statutory mandatory minimum sentence

24    of 84 months and that's going to run consecutive to the

25    guideline range for the other counts, and what that means is

1    it's going to come after, they are going to go one after the

2    other.  Do you understand that?

3    A.  Yes.

4    Q.  That results in a total guideline range of 154 to 171

5    months' imprisonment.  Do you agree with that, Mr. Brantley?

6    A.  Yes.

7    Q.  Do you feel that you have had adequate time to go over

8    these guideline calculations with your attorney?

9    A.  Yes.

10   Q.  Thank you.

11        Now, based on those guideline ranges and the

12   adjusted offense level, the fine is going to be 25,000 to

13   250,000 dollars.  Do you understand that?

14   A.  Yes.

15   Q.  And, of course, in the end it's going to be up to the

16   Court to decide what your fine will be or if you will get a

17   fine.

18        And then supervised release, which the Court

19   already thoroughly went over, the range is going to be at

20   least two years, but not more than five years.  Does that

21   sound right to you?

22   A.  Yes, ma'am.

23   Q.  Now, another thing to note is that in this plea

24   agreement both parties have reserved the right to make

25   departure motions and to oppose any motions made by the

1   opposing party, which means that at sentencing the United

2   States could ask the judge to vary from the guidelines

3   range, but so could you and Mr. Sicoli.  Does that make

4   sense to you?

5   A.  Yes, it does.

6   Q.  Now, notwithstanding that, the one thing that is

7   statutory that no one has any control over is the 84 months

8   for Count 3 and the fact that those 84 months have to run

9   consecutive to any other months of imprisonment imposed.  Do

10  you understand that?

11  A.  Yes, I do.

12  Q.  Now, it's important to note, and I think we've already

13  gone over this, that in the end, all of this is going to be

14  up to Judge Wright.  So in the end the Court is going to get

15  the presentence investigation and then she's going to be the

16  one making the final determination.  You understand that?

17  A.  Yes, I do.

18  Q.  There are a couple of other things that I want to go

19  over, and the first one is paragraph 7 in the plea agreement

20  and that just says that in return for your guilty plea

21  today, as set forth in our plea agreement, the United States

22  is agreeing not to charge you with any additional crimes

23  based on any conduct that is known to the United States as

24  of today.  Do you understand that?

25  A.  Yes, I do.

1    Q.  And then I want to move to paragraph 8 and in

2    paragraph 8 it goes over some agreements that were made

3    between you, the United States, and Ramsey County Attorney's

4    Office and Hennepin County Attorney's Office, correct?

5    A.  Um-hmm.

6    Q.  And did you go over those with Mr. Sicoli?

7    A.  Yes.

8    Q.  What those agreements are is that if you plead guilty

9    today as set forth in the agreement, those other two

10   counties will not bring criminal charges against you for any

11   criminal acts associated with Counts 1 through 3, 5, and 7

12   and an additional robbery in Brooklyn Park, Minnesota that

13   took place on March 23, 2018.  Does that sound correct to

14   you?

15   A.  Yes.

16   Q.  Now, Judge Wright already went over your appellate

17   waiver with you.  Did that make sense to you?  You

18   understood that you were waiving your right to an appeal

19   unless you were sentenced to more than 162 months?

20   A.  Yes, it did.

21   Q.  And you're also waiving the right to file a

22   collateral -- a post-conviction collateral attack?

23   A.  What is that?

24   Q.  Did Mr. Sicoli go over a 2255 motion with you?

25   A.  No, he didn't.

1          MS. BATES:  Mr. Sicoli, do you want to take a few

2     minutes to go over that with him or --

3          MR. SICOLI:  I can go over it with him on the

4     record because we had some discussion about it.  I think he

5     is just confused about the statute number.

6          THE COURT:  Thank you, Mr. Sicoli.

7                              **EXAMINATION**

8     BY MR. SICOLI:

9     Q.  Mr. Brantley, you and I discussed the fact that you do

10     have a right -- in addition to an appeal, you usually have a

11     right to file a motion, a writ of habeas corpus, saying that

12     something was wrong in your case.  Do you understand that?

13     A.  Oh, okay.  Yeah.

14     Q.  And you understand that under this appeal waiver, you're

15     not only giving up your right to do an appeal if you get

16     less than 162 months or less, but you're also giving up the

17     right to do a collateral attack; do you understand that?

18     A.  That's what I was asking.  The "collateral attack"

19     phrase, what is it?  So is that the habeas corpus?

20     Q.  Yes, that's filing a habeas corpus.

21     A.  Okay.

22     Q.  Now, you and I discussed the fact, though, that there is

23     an exception to that and it is contained in the plea

24     agreement, that you are reserving your right to make a claim

25     of ineffective assistance of counsel if you think that I

1   didn't advise you correctly or did something wrong.  Do you

2   understand that?

3   A.  Yes, yes.

4   Q.  So regardless of the fact that you're giving up your

5   right to file an appeal if it's 162 months or less, you

6   still are reserving the right both to appeal your case for

7   ineffective assistance of counsel and also to file a writ of

8   habeas corpus under 28 U.S.C. 2255 claiming that I did

9   something wrong and I was ineffective.  You understand that?

10  A.  Yes, I do.

11          MR. SICOLI:  I think that's sufficient, Your

12  Honor.

13          THE COURT:  Thank you.

14          MS. BATES:  Thank you.

15          THE COURT:  Is there anything further as to the

16  factual basis or the terms of the plea agreement?

17          MS. BATES:  You don't mean the factual basis,

18  right?

19          THE COURT:  I'm sorry.  No.  The terms of the plea

20  agreement.

21          MS. BATES:  One more term I would like to go over,

22  Your Honor.

23          THE COURT:  Please.

24

25

1                           **EXAMINATION**

2    BY MS. BATES:

3    Q.  Mr. Brantley, you also see in paragraph 14 that you've

4    agreed to waive the Freedom of Information and Privacy Act,

5    correct?

6    A.  Yes.

7    Q.  And all that that means is that you cannot use that

8    particular statute to try to gain information, to get info

9    about your case.  So you can't use that civil statute to try

10   to get information about your case.  Did Mr. Sicoli go over

11   that with you?

12   A.  Yes, he did.

13   Q.  Okay.  Thank you.

14          And then, lastly, you have agreed to a total of

15   $94,809 in restitution, correct?

16   A.  Yes.

17          MS. BATES:  Thank you.  Nothing further, Your

18   Honor.

19          THE COURT:  Thank you, Ms. Bates.

20                          **EXAMINATION**

21   BY THE COURT:

22   Q.  Now, Mr. Brantley, Ms. Bates has just reviewed with you

23   the terms of the plea agreement.  Are those the terms as you

24   understand them?

25   A.  Yes, ma'am.

1   Q.  And I want to be sure that you understand the impact of

2   your plea agreement with the United States on me, so the

3   impact on me.

4            First, although the United States and your

5   attorney can make a recommendation about your sentence, I

6   don't have to accept that recommendation and I don't have to

7   sentence you according to the plea agreement.  Do you

8   understand that?

9   A.  Yes, ma'am.

10  Q.  Okay.  And your plea agreement discusses the federal

11  sentencing guidelines.  I want to explain to you how I will

12  use those guidelines.

13           So first I'll look at the federal sentencing

14  guidelines and I will decide for myself what they recommend

15  in your case.  So what the plea agreement says about the

16  sentencing guidelines, that's not binding on me.  Do you

17  understand that?

18  A.  Yes, ma'am.

19  Q.  Okay.  Now, I'll then look at the guidelines again

20  because sometimes the guidelines themselves recommend a

21  sentence that's either below or above that range, what we

22  call a departure.  Do you understand that?

23  A.  Yes, ma'am.

24  Q.  Okay.  And, finally, I will decide whether to follow the

25  sentencing guidelines' recommendation.  I want you to

1    understand it's just a recommendation.  It is not binding on

2    me and, in fact, I'm required to consider many things in

3    addition to the recommendation of the guidelines when I

4    decide on your sentence.  Do you understand that?

5    A.  Yes, ma'am.

6    Q.  Okay.  And so you can't count on receiving a guideline

7    sentence.  You may get a sentence that's higher than the

8    guidelines.  You may get a sentence that's lower than the

9    guidelines recommend.  Do you understand that?

10   A.  Yes, ma'am.

11   Q.  Okay.  And I want to make clear that as I sit here

12   today, I do not know what sentence I will impose and I won't

13   begin to consider what sentence I should impose until a

14   presentence investigation is completed and I receive that

15   presentence report about you.

16          And so because I have no idea what sentence I will

17   impose, it's important to know and remember and to keep in

18   mind neither the lawyers nor you nor anyone else can know

19   what sentence I will impose.  Make sense?

20   A.  Yes, ma'am.

21   Q.  Okay.  It's possible that I will give you a sentence

22   that's longer than you're expecting or hoping for.  That's a

23   possibility.  And if that happens, you will not be able to

24   take back or withdraw your guilty plea.  You may be able to

25   appeal your sentence, but no matter what sentence I impose,

1   your guilty plea will stand.  Do you understand that?

2   A.  Yes, ma'am.

3   Q.  Okay.  Now, before you can plead guilty, Mr. Brantley, I

4   have to determine whether there is a factual basis for your

5   guilty plea and this means I have to make sure that you

6   actually committed the crimes that you're pleading guilty

7   to.  And so at this point I'll ask Ms. Bates to review with

8   you the factual basis for the guilty pleas.

9          MS. BATES:  Thank you.

10                      **EXAMINATION**

11  BY MS. BATES:

12  Q.  Mr. Brantley, we're going to start on page 2 of the plea

13  agreement and start with the factual basis for Counts 1, 2,

14  3, and 5.

15          Is it true that on February 22, 2018 you and two

16  co-conspirators, by force, violence, and intimidation, took

17  from victim tellers approximately $9,816 in United States

18  currency belonging to Lake Area Bank in White Bear Lake,

19  Minnesota?

20  A.  That's true.

21  Q.  Is it true that prior to robbing Lake Area Bank, you and

22  your two co-conspirators cased the bank in preparation for

23  the robbery?

24  A.  That's true.

25  Q.  Is it true that during the robbery on February 22, 2018,

1    all three, you and the two co-conspirators, entered the

2    bank, approached the employees, and demanded money?

3    A.   That's true.

4    Q.   And that each three of you were armed with handguns;

5    however, all three of you wore face masks and gloves to

6    conceal your identities?

7    A.   That's correct.

8    Q.   Is it true that all three of you brandished the handguns

9    during the course of the robbery?

10   A.   That's correct.

11   Q.   Is it true that you specifically were armed with a

12   loaded .40-caliber Glock handgun?

13   A.   That's true.

14   Q.   Is it true that your role in the Lake Area Bank robbery

15   was to make sure that no employees made phone calls or took

16   action to alert law enforcement while the other two

17   co-conspirators took money from the bank tellers?

18   A.   That's true.

19   Q.   Is it true that, in response to these demands and

20   threats from you and your co-conspirators, the victim

21   tellers at the Lake Area Bank provided all three of you with

22   $9,816?

23   A.   Yes.

24   Q.   And then all three of you fled Lake Area Bank and threw

25   cell phones that you had taken from employees and patrons of

1    the bank out the window as you drove away?

2    A.  That's true.

3    Q.  Is it true that at the time of the robbery, Lake Area

4    Bank was federally insured by the Federal Deposit Insurance

5    Corporation?

6    A.  I wouldn't exactly know that, but I would assume so.

7    Q.  Well, I don't want you to assume anything.  If we

8    received information that on February 22, 2018 Lake Area

9    Bank was insured by the FDIC, would you agree with that?

10   A.  Yes, I would.  I mean, you would know better than I

11   would, I mean, as far as the insurance go.  I mean, I would

12   agree with that.

13   Q.  Thank you.

14           Now, following that bank robbery, did you and the

15   two co-conspirators split the proceeds?

16   A.  Yes.

17   Q.  Now, on May 4, 2018 you and two co-conspirators, by

18   force, violence, and intimidation, took from victim tellers

19   $88,618 in United States currency belonging to Bremer Bank

20   in Brooklyn Center, Minnesota; is that true?

21   A.  That's true.

22   Q.  During that robbery you and one of the other

23   co-conspirators entered Bremer Bank and approached the

24   employees of the bank and demanded money, correct?

25   A.  That's correct.

1    Q.  Each of you were armed with handguns and each of you

2    wore face masks and gloves, correct?

3    A.  That's correct.

4    Q.  The third bank robber, the third co-conspirator,

5    remained outside in a getaway car throughout the robbery,

6    correct?

7    A.  Yes.

8    Q.  That co-conspirator was able to communicate with the two

9    of you by using walkie-talkies, correct?

10   A.  That's correct.

11   Q.  During the May bank robbery, you were armed with a

12   loaded .40-caliber Glock handgun, correct?

13   A.  That's correct.

14   Q.  Now, in response to demands and threats from you and the

15   co-conspirator, the victim tellers of the bank provided you

16   with $88,618, correct?

17   A.  That's correct.

18   Q.  After brandishing the firearms, you and two of the other

19   co-conspirators drove away from the bank, correct?

20   A.  That's correct.

21   Q.  Now, at the time of the robbery, the Bremer Bank's

22   deposits were federally insured by the Federal Deposit

23   Insurance Corporation, correct?

24   A.  Correct.

25   Q.  And you have no reason to dispute that, correct?

1    A.  No.

2    Q.  You have no reason to dispute that Lake Area Bank was

3    insured by the FDIC either, correct?

4    A.  No, I -- no.  I mean, if you -- I mean, just because,

5    like, I don't know.

6    Q.  That's fine.

7           Following the bank robbery in May, you and the

8    other two robbers split the proceeds, correct?

9    A.  That's correct.

10   Q.  And later on on the evening of May 4th, you burned the

11   clothes that you wore during the bank robbery to try to

12   conceal the evidence, correct?

13   A.  That is correct.

14   Q.  Now I'm going to move on to May 22, 2018, and that's the

15   disposal of a firearm to a prohibited person, Count 7.

16          On the evening of May 21, 2018, you were provided

17   with two handguns by an individual known to you, correct?

18   A.  That's correct.

19   Q.  You were given the two handguns by this individual after

20   hearing multiple gunshots and seeing a dead body in the

21   vicinity of your house, correct?

22   A.  That's correct.

23   Q.  The firearms included a Glock 27 handgun and a Heckler &

24   Koch handgun, correct?

25   A.  That's correct.

1   Q.  The next morning, on May 22, 2018, you and the

2   individual arranged to meet so that you could return the

3   firearms to him, correct?

4   A.  That is correct.

5   Q.  And you met at a Perkins restaurant in Minneapolis,

6   Minnesota?

7   A.  That's correct.

8   Q.  At this meeting you returned those two handguns to the

9   individual, correct?

10  A.  That's correct.

11  Q.  During the course of your conversation with him on

12  May 22, 2018, this individual told you that he had used

13  those two firearms to shoot a man the night before, on

14  May 21, 2018, correct?

15  A.  That is correct.

16  Q.  And you were aware that on May 21 and May 22, 2018 this

17  shooter was a convicted felon who was prohibited from

18  possessing firearms, correct?

19  A.  Correct.

20  Q.  You were also aware, from prior conversations that you

21  had with him, that he knew that he was prohibited from

22  possessing firearms because of his prior convictions,

23  correct?

24  A.  That is correct.

25  Q.  Now, you agree that you possessed those firearms on

1     May 21 to 22, 2018 and you acted voluntarily when you

2     possessed them and when you gave them back to the shooter,

3     correct?

4     A.  Say that again.

5     Q.  You agree that all your actions were voluntary in that

6     situation, you voluntarily took the firearms from the

7     shooter and then you voluntarily gave them back.  No one

8     threatened you, correct?

9     A.  That's correct.

10    Q.  Those two handguns were manufactured outside the state

11    of Minnesota, correct, or you would have no reason to

12    dispute that they were manufactured outside the state of

13    Minnesota?

14    A.  Yeah, that's correct.

15    Q.  Which means that they traveled into the state of

16    Minnesota prior to May 22, 2018, correct?

17    A.  Yes.

18    Q.  Now, just to clarify, all of the actions that we've gone

19    over today, Mr. Brantley, for Counts 1, 2, 3, 5, and 7, were

20    all actions that you committed voluntarily, correct?

21    A.  Say that again.

22    Q.  All of the actions that we've gone over today were

23    actions that you committed voluntarily, correct?

24    A.  Yes, ma'am.

25              MS. BATES:  Your Honor, nothing further.

1          THE COURT:  Mr. Sicoli, are there any other

2     provisions that need to be reviewed or anything else that

3     needs to be clarified regarding the factual basis?

4          MR. SICOLI:  No, Your Honor.

5          THE COURT:  How has the plea agreement been

6     tendered?

7        (Document handed to Court by courtroom deputy)

8          THE COURT:  Thank you.

9     BY THE COURT:

10    Q.  I'm looking at a hard copy of the plea agreement,

11    Mr. Brantley, and I'm looking in particular at page 13 of

12    that plea agreement, which is the last page.  Now, there are

13    three signature lines, and the one in the middle has your

14    name and a signature above it.  Is that your signature, sir?

15    A.  Yes, ma'am.

16         THE COURT:  And, Mr. Sicoli, is there anything

17    else that we should address as to the factual basis or that

18    needs to be clarified?

19         MR. SICOLI:  No.  The only thing I would ask to

20    clarify is I think when you were asking Mr. Brantley

21    questions, I think you mentioned that the maximum penalty on

22    Count 5 was ten years.  My understanding is it should be

23    five years, Your Honor, for the conspiracy count.

24         THE COURT:  I will stand corrected.

25    BY THE COURT:

1  Q.  Do you understand that that is the maximum possible

2  penalty?

3  A.  Yes, ma'am.  I'm just trying to find it, but I

4  understand --

5  Q.  Let's go to the page of the plea agreement that

6  describes it.

7          MR. SICOLI:  Mr. Brantley, it's page 6.

8          THE DEFENDANT:  For Count 5?

9          THE COURT:  Yes.

10          THE DEFENDANT:  Okay.

11          THE COURT:  And as to the fine, would you clarify

12  that for me, Mr. Sicoli.

13          MR. SICOLI:  Yeah.  Looking at paragraph -- or

14  page 6 on the maximum -- first of all, the maximum term for

15  the conspiracy offense is five years.  Do you understand

16  that, Mr. Brantley?

17          THE DEFENDANT:  Yes.

18          MR. SICOLI:  And you also understand that the

19  maximum fine is up to $250,000; is that correct?

20          THE DEFENDANT:  Yes.

21          MR. SICOLI:  Thank you, Your Honor.

22          THE COURT:  Thank you.  Is there anything further

23  that needs to be addressed or clarified at this time?

24          MR. SICOLI:  No, Your Honor.

25  BY THE COURT:

1    Q.  Now, Mr. Brantley, other than what's contained in that

2    plea agreement and what I have told you, has the government

3    or anyone else made any promises to you in order to get you

4    to plead guilty?

5    A.  No, ma'am.

6    Q.  And has anyone forced you or threatened you, coerced you

7    or done any harm to you or any other person to get you to

8    plead guilty?

9    A.  No, ma'am.

10   Q.  Are you planning to plead guilty today because you are,

11   in fact, guilty of the crimes to which you will plead

12   guilty?

13   A.  Yes, ma'am.

14   Q.  And are you making this guilty plea voluntarily and

15   on -- or these pleas voluntarily and on your own free will?

16   A.  Yes, ma'am.

17           THE COURT:  Anything further that we need to

18   address as to the voluntariness?

19           MR. SICOLI:  We don't have anything further, Your

20   Honor.

21           THE COURT:  Okay.  Ms. Bates, anything further

22   that you would like me to cover before I ask Mr. Brantley

23   for his plea?

24           MS. BATES:  No.  Thank you, Your Honor.

25   BY THE COURT:

1    Q.  Mr. Brantley, do you have any questions for me or for

2    Mr. Sicoli before I ask for your plea?

3    A.  No, ma'am.

4    Q.  You understand your constitutional rights?

5    A.  Yes, I do.

6    Q.  And you also knowingly and intelligently and voluntarily

7    give up those rights?

8    A.  Yes, I do.

9    Q.  Then I will ask you, Samuel Lamar Brantley, how do you

10   plead to Count 1 of the Indictment, which alleges that you

11   committed the crime of armed bank robbery, in violation of

12   Title 18, United States Code, Sections 2113(a) and 2113(d),

13   do you plead guilty or not guilty?

14   A.  Guilty.

15   Q.  And, Mr. Brantley, how do you plead to Count 2 of the

16   Indictment, which alleges that you committed the crime of

17   armed bank robbery, in violation of Title 18, United States

18   Code, Sections 2113(a) and 2113(d), do you plead guilty or

19   not guilty?

20   A.  Guilty.

21   Q.  As to Count 3, Mr. Brantley, that count alleging that

22   you committed the crime of carrying a firearm during and in

23   relation to a crime of violence, in violation of Title 18,

24   United States Code, Section 924(c)(1)(A)(ii), how do you

25   plead, guilty or not guilty?

1    A.  Guilty.

2    Q.  And, Mr. Brantley, how do you plead to Count 5 of the

3    Indictment, which alleges that you committed the crime of

4    conspiracy to commit bank robbery, in violation of Title 18,

5    United States Code, Sections 2113(a), 2113(d), and 371, do

6    you plead guilty or not guilty?

7    A.  Guilty, Your Honor.

8    Q.  Okay.  And, Mr. Brantley, how do you plead to Count 7

9    of the Indictment, which alleges that you committed the

10    crime of disposing of a firearm to a felon, in violation of

11    Title 18, United States Code, Sections 922(d)(1) and

12    924(a)(2), do you plead guilty or not guilty?

13    A.  Guilty, Your Honor.

14          THE COURT:  So based on the record in this case, I

15    find that the defendant, Samuel Lamar Brantley, is mentally

16    competent and capable of entering an informed plea.

17          I find that Mr. Brantley understands the nature of

18    the charges against him, the nature of these proceedings,

19    and the consequences of his guilty pleas.

20          I find that Mr. Brantley has made his guilty pleas

21    in a manner that is free, that's voluntary, that's knowing

22    and informed.

23          And I find that his pleas of guilty are supported

24    by independent facts in the record establishing all of the

25    elements of the offenses listed in Counts 1, 2, 3, 5, and 7

1    of the Indictment.

2            So, Mr. Brantley, I accept your guilty pleas and I

3    adjudge you guilty of each of the offenses to which you have

4    pled guilty as a matter of law.

5            So, Mr. Brantley, I want to review with you now

6    what will happen next.

7            The probation officer will conduct an

8    investigation and that probation officer will prepare a

9    report that helps me determine what your sentence should be,

10   and the probation officer will interview you as part of that

11   investigation and you will be required to give information

12   for that report.  Now, Mr. Sicoli, your attorney, certainly

13   may be present with you when you're interviewed.

14           After the report is prepared, you'll have a chance

15   to read the report and to review the report and to discuss

16   the report with Mr. Sicoli, your attorney, and if there's

17   anything in that report that you think is incorrect or that

18   you think is unfair or if you believe that there's been

19   something left out of the report that you want me to know,

20   you will have the chance to file objections to the report.

21           And before I decide on your sentence, I will read

22   not only the report, but I will also review any objections

23   that you or the government have made, as well as any other

24   papers that you and the government have submitted.

25           We will then have a sentencing hearing, and that's

1    where I will impose your sentence.  But before I impose that

2    sentence, I will give both you and your attorney,

3    Mr. Sicoli, an opportunity to speak at that hearing, and the

4    United States will also have an opportunity to speak and be

5    heard.

6              Do you understand how we will move forward from

7    here, Mr. Brantley?

8              THE DEFENDANT:  Yes, ma'am.  You mentioned

9    something about papers.  Can you -- you said, "papers."

10   What type of papers?

11             THE COURT:  I'm thinking of all of the materials

12   that will be prepared for the Presentence Investigation

13   Report.  So you will have an opportunity -- that will be a

14   written report and you will have the opportunity to review

15   that.

16             THE DEFENDANT:  Oh, okay.

17             THE COURT:  Mr. Brantley is currently in custody

18   and the Mandatory Detention Act does apply.

19             Is there anything further from counsel at this

20   time?

21             MS. BATES:  Not from the United States, Your

22   Honor.

23             MR. SICOLI:  No, Your Honor.  Thank you.

24             THE COURT:  Okay.  So, Mr. Brantley, you are

25   remanded to the custody of the United States Marshal at the

1    conclusion of this hearing.

2         You will be informed of the date of your

3    sentencing hearing.  The law requires that you attend your

4    sentencing hearing, and the failure to appear at your

5    sentencing hearing is itself a crime that you could be

6    prosecuted for if you fail to appear.  Do you understand

7    that?

8         THE DEFENDANT:  Yes, ma'am.

9         THE COURT:  Okay.  I have one additional matter

10   that we need to address and that is a housekeeping matter or

11   a courtroom keeping matter, and that is I will ask that

12   everyone clean up using the disinfectants and other cleaning

13   materials and solutions that are at counsel table before you

14   leave the courtroom today.  So use that to disinfect your

15   area and, Mr. Sicoli, the area that's occupied by

16   Mr. Brantley as well and certainly all of the area that the

17   United States is occupying needs to be cleaned before you

18   all leave the courtroom.

19        I'm looking to see if handsets were used.  If

20   handsets -- I'm sorry.  If headsets were used, please clean

21   those as well, and the supplies and the instructions for you

22   are at your counsel table.

23        Is there anything further that we need to address

24   at this time on this matter?

25        MR. SICOLI:  No, Your Honor.  Thank you.

1              MS. BATES:  No, Your Honor.  Thank you.

2              THE COURT:  Okay.  So this concludes our hearing.

3      Thank you, Counsel.  And good luck to you, Mr. Brantley.

4              THE DEFENDANT:  Thank you.

5          (Court adjourned at 10:24 a.m.)

6                          *      *      *

7

8

9          I, Lori A. Simpson, certify that the foregoing is a

10     correct transcript from the record of proceedings in the

11     above-entitled matter.

12

13              Certified by:  *s/ Lori A. Simpson*

14                          Lori A. Simpson, RMR-CRR

15

16

17

18

19

20

21

22

23

24

25