UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-337 (WMW/HB)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SAMUEL LAMAR BRANTLEY,

    Defendant.

**GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING**

The United States of America, by and through its attorneys, Charles J. Kovats, Jr. Acting United States Attorney for the District of Minnesota, and Amber M. Brennan and Samantha H. Bates, Assistant United States Attorneys, submits its position with respect to the sentencing of Defendant Samuel Lamar Brantley.

For the reasons set forth herein, unless there are grounds for departure the Government respectfully submits that the Court should sentence Mr. Brantley to imprisonment for a term of 154 months.

**I.    BACKGROUND AND PRESENTENCE INVESTIGATION REPORT**

*A.  Mr. Brantley's Guidelines Calculations*

On October 8, 2020, Mr. Brantley pleaded guilty to five of the seven counts alleged against him in the Indictment: Counts 1-2, Armed Bank Robbery on February 22 and May 4, 2018; Count 3, Carrying a Firearm During and In Relation to a Crime of Violence as to the February 22 bank robbery; Count 5, Conspiracy to Commit Armed Bank Robbery from

February 22 through May 4, 2018; and Count 7, Disposing of a Firearm to a Felon on or about May 22, 2018. (Dkt. 47 (Plea Agreement); PSR ¶¶ 1-2.)  In their plea agreement, the parties estimated that Mr. Brantley's criminal history category is I, his guidelines for Counts 1, 2, 5, and 7 would be 70-87 months' imprisonment based on an adjusted offense level of 27, and his guidelines for Count 3 would be statutory mandatory sentence of 84 months' imprisonment which must run consecutive to the sentence imposed on the other counts, resulting in a cumulative Guidelines range of 154-171 months' imprisonment. (Dkt. 47 ¶ 5.)

The PSR agrees with the parties' determination as to the adjusted offense level for Counts 1, 2, 5, and 7 as well as the mandatory minimum for Count 3.  However, the PSR determined that Mr. Brantley falls in criminal history category II. (PSR ¶¶ 81-82.)  This determination is based on two misdemeanor convictions from 2008 and 2010, each of which received one point. (PSR ¶¶ 76, 77.) Mr. Brantley has objected to the point assigned his 2008 misdemeanor conviction for petty misdemeanor possession of marijuana. (PSR A.1.) He claims that he did not receive the citation; indeed, the record shows the citation was returned to the court as undeliverable. (*Id.*) Based on a criminal history category II, the PSR determined that Mr. Brantley's Guidelines range on Counts 1, 2, 5, and 7 is 78-97 months, resulting in a cumulative Guidelines range of 162-181 months' imprisonment.

B.  *The Instant Offense Conduct* **(PSR ¶¶ 11-28; Dkt. 47 ¶ 2.)**

In a three-month period between February 22 and May 22, 2018, Mr. Brantley engaged in a wanton and violent crime spree that included committing two armed bank robberies, conspiring to commit those robberies, and assisting a known felon with hiding

2

and possessing two guns that had been used in a shooting. In the first bank robbery, of White Bear Lake Bank on February 22, Mr. Brantley pointed his gun at customers and held them at bay while his two accomplices pointed guns at the bank employees and gathered money in pillowcases. They stole $9,816, although $3,625 was later returned to the bank. In the second bank robbery, on May 5, 2018, Mr. Brantley and an accomplice entered Bremer Bank in Brooklyn Center, MN, brandished guns and robbed the tellers of $88,618 while a third accomplice waited in the car and served as the getaway driver. Approximately two weeks later, on May 21, Mr. Brantley was given two handguns by an individual he knew after hearing multiple gunshots and seeing a dead body in the vicinity of Mr. Brantley's residence. The next day, Mr. Brantley returned those guns to the individual, who admitted to having shot a man the night before, knowing the individual was a felon and was therefore prohibited from possessing guns.

Also in May 2018, after the foregoing events, law enforcement executed a search warrant at Mr. Brantley's residence and recovered two firearms, a substantial amount of ammunition, and firearm-related accessories.

II.   **ARGUMENT**

The primary issue before the Court is what constitutes a reasonable sentence in light of the factors enumerated in Title 18, United States Code, Section 3553(a). Given all of the relevant considerations in this case, unless there is a basis for departure the Government recommends a sentence of 154 months of imprisonment followed by 3 years of supervised release. This represents the bottom of Mr. Brantley's advisory guidelines range as contemplated by the parties in the plea agreement, and an eight month downward variance

from the bottom of his guidelines range as determined in the PSR. While the United States does not dispute the PSR's conclusion that Mr. Brantley has 2 criminal history points, it respectfully believes that Mr. Brantley's criminal history is consistent with a person who is a category I, and that a decade-old petty misdemeanor should not serve as a basis to increase his criminal history category from I to II. Such a variance would also uphold the spirit of the parties' plea agreement.

### A.   *The Legal Framework*

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth the appropriate sentencing methodology: the district court calculates the advisory Guidelines range and, after hearing from the parties, considers the 18 U.S.C. § 3553(a) factors to determine an appropriate sentence. *Id.* at 49-50; *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors"). The district court may not assume that the Guidelines range is reasonable, but instead "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. If the court determines that a sentence outside of the Guidelines is called for, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* Section 3553(a) requires the Court to analyze a number of factors, including, "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need

for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities."  18 U.S.C. § 3553(a).

### B. *The Appropriate Sentence*

Mr. Brantley's crimes were egregious.  He terrorized bank customers and employees during two separate armed robberies, pointing guns at them and threatening their lives.  He assisted a known felon who had just shot someone in hiding and possessing guns.  While reprehensible, Mr. Brantley's three-month crime spree also appears to be an anomaly in an otherwise law abiding life.  He was 31 years old at the time and had no prior history of violent crime - or any crimes at all beyond two petty misdemeanors in his early 20s.

Until committing the instant offense conduct, Mr. Brantley appears to have managed to escape a difficult childhood with a real chance at leading a productive life surrounded by family and friends.  His mother was a drug addict who abandoned him. His father abandoned him.  His impoverished grandmother tried to care for him but could no longer do so after he turned 10 years old and sent him to live with a father who he had never met. He lasted until age 16 with his father, and then began couch-surfing with friends.  Mr. Brantley doesn't provide any information about what life with his father was like for those six years, given that his father had not endeavored to meet Mr. Brantley prior to that time, it is not difficult to imagine that it was challenging at the very least.  On his own by age 16, Mr. Brantley enlisted in the United States Army at age 17.  He was forced to leave the army after two years due to an injury. Mr. Brantley has been together with his wife since they were 14 years old, and the couple share six children together. Mr. Brantley has been a present husband and father; he has provided for his family and claims he committed the

5

instant offense because he needed money to support them. He also has a history of depression and related mental health concerns that he believes impacted his decision-making around that time.

A significant prison sentence is warranted here, to reflect the seriousness of Mr. Brantley's crimes, promote respect for the law, and deter Mr. Brantley and others from committing similar crimes. However, Mr. Brantley's lack of previous criminal history and his life circumstances are somewhat mitigating. Given the foregoing, the United States believes that unless there are grounds for departure, a sentence of 154 months, the bottom of his advisory guidelines range if he were a criminal history category I, serves the goals embodied by § 3553(a).

Dated:  March 4, 2022

Respectfully Submitted,

CHARLES J. KOVATS, Jr.
Acting United States Attorney

*<u>s/Amber M. Brennan</u>*
BY: AMBER M. BRENNAN
SAMANTHA H. BATES
Assistant U.S. Attorneys